BARTHOLOMAUS, by guardian *ad litem,* Appellant, vs. MIL-
WAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Re-
spondent.

*September 15—October 9, 1906.*

*Street railways: Injury to passenger: Collision at railroad crossing:
Ordinance requiring street cars to stop, etc.: Several tracks:
Negligence of employees: Evidence: Court and jury.*

1. In an action against a street railway company for injuries sus-
tained by a passenger in a collision with a train at a railroad
crossing, the evidence is *held* to show, as matter of law, com-
pliance with a municipal ordinance which made it the duty of
the motorman to stop the car at least twenty feet from the rail-
road crossing and of the conductor to pass in front of the car
a sufficient distance to enable him to ascertain whether there
was any danger in sight before the car was again placed in mo-
tion.

2. Where a distance of only about eighty-five feet intervened be-
tween the tracks of different railroads crossed by street rail-
way tracks, the ordinance did not require that a street car,
which had stopped before crossing the track of the first rail-
road, should again stop before crossing the tracks of the sec-
ond. It is sufficient in such a case if the conductor proceeds
sufficiently in advance of the car to a point on the tracks of
the second railroad where he can ascertain whether there is
any visible danger before the car crosses them.

3. The results of calculations based upon statements of witnesses as
to the speed of the railroad train, the speed of the street car,
and the distances traveled by the train after the noise of its
approach was heard by the conductor of the street car, do not
constitute established physical facts such as would raise a con-
flict of evidence and make the question of negligence on the
part of the conductor and motorman one for the jury, as against
the uncontradicted positive testimony showing that they were
not negligent in attempting to cross the tracks.

APPEAL from a judgment of the circuit court for Milwau-
kee county: LAWRENCE W. HALSEY, Circuit Judge. *Af-
firmed.*

Plaintiff sues to recover damages for a personal injury.
On the evening of March 16, 1902, *Henrietta Bartholomaus,*

the plaintiff, was a passenger on one of defendant's street cars, traveling over and along Kinnickinnic avenue in the city of Milwaukee. The car reached the point where the accident occurred at about 8:40 o'clock p. m. At this point defendant's tracks extend along Kinnickinnic avenue, running in a northwesterly and southeasterly direction, and are intersected by the tracks of the Chicago & Northwestern Railway Company and the Chicago, Milwaukee & St. Paul Railway Company. The sketch on the following page represents the track of the defendant company and the railroads located at the point of intersection.

The night was cold. It had been and was still snowing, and there was a southwest wind blowing at a velocity of about twenty-five miles per hour. The street car approached the crossing from the north at about the time the regular passenger train on the Chicago, Milwaukee & St. Paul Railway, running from Chicago to Milwaukee, was scheduled to pass over the crossing on the southeasterly track of the railway. When it approached the track of the Chicago & Northwestern Railway the conductor of the car went in front of the car to where he had a clear view of this track, made observations of the track for approaching trains, and then signaled to the motorman to come along with the car, meanwhile preceding the car to the first main track of the Chicago, Milwaukee & St. Paul Railway Company. The motorman obeyed the signal and advanced the car to cross the railway tracks. Before the car had cleared the last railway track the passenger train coming from Chicago collided with the rear end of the car, threw it off the rails, caused plaintiff and other passengers to be violently thrown from their seats, and caused the injury to plaintiff's person for which she claims damages. The plaintiff charged that the defendant's servants were negligent in several respects in the performance of their duties as its servants and employees in running this car over the railway crossing. These will be specifically considered in the opin-

CHICAGO MILWAUKEE AND SAINT PAUL RY.

C. & N. W. RY.

CAR BODY AND LIGHT

RAILWAY

ELECTRIC

THE T. M. E. R. & L. CO.

MILWAUKEE

gate pole

gate

Post with sign

pole

Car Body

fence

N
W   E
S

ion.   The case was tried before the court and a jury.   The court directed a verdict to be found in defendant's favor, upon the ground that the evidence showed without dispute that defendant was not guilty of negligence as charged in the complaint, and awarded judgment against plaintiff for defendant's costs in the action.   This is an appeal from such judgment.

*W. B. Rubin,* for the appellant.

*Clarke M. Rosecrantz,* for the respondent.


SIEBECKER, J.   It is contended that the defendant's servants were negligent in failing to obey the ordinance of the city of Milwaukee prescribing the duties of persons operating street cars upon the streets of the city.   The ordinance provides:

"It is hereby made the duty of every motorman of an electric car, . . . before crossing a railway crossing or bridge with such car, to cause the same to come to a standstill at least twenty feet from such railroad crossing or bridge, and it shall then be the duty of the conductor of such car to pass in front of the same a sufficient distance to enable him to ascertain whether there is any danger in sight and before said car is again placed in motion before crossing a railroad crossing."

One of the obvious purposes of this ordinance is to protect passengers on street cars from the dangers of collisions with railroad trains.   It is charged that defendant's servants omitted their duty on the occasion of this collision, in that they failed to stop the car at the required distance from the railroad tracks of both railroads at the crossings on Kinnickinnic avenue.   If the defendant's servants actually failed to comply with the ordinance as claimed, it would constitute proof tending to show the negligence charged, and under such circumstances the case should have been submitted to the jury for a determination of the question.   We do not find the claim that the car was not stopped before crossing the Chicago &

Northwestern Railway track as required by the ordinance supported by the evidence.  The only witnesses testifying directly on this point are the motorman and the conductor of the car, who both state that it was stopped and that the conductor passed in front of the car and ascertained that there was no danger in sight before he signaled to the motorman to cross the track.  Plaintiff relies upon the testimony of the witness Behling as contradicting this evidence, but no such contradiction appears.  Mr. Behling, the gatekeeper at the railway crossing, testified that he saw the conductor in front of the car before it crossed this track and that he saw the car moving, but he nowhere asserts, nor can it be inferred from his statements, that the car did not stop as required.  It is apparent that he did not observe what took place until the car was in motion in compliance with the signal of the conductor after he had ascertained that there was no danger in crossing.

It is further urged that the ordinance required that the car should be brought to a standstill at the specified distance from the Chicago, Milwaukee & St. Paul Railway tracks before crossing them, and that the conductor should perform his duties as prescribed by the ordinance before the car was again put in motion to cross them.  It must be held that the ordinance was intended to prescribe a safe method of conducting the street-car business at and over railroad crossings for the best protection of passengers and the public against collision with railroad trains.  An inspection of the crossing in question shows that the space necessarily occupied in running cars and trains over the respective tracks at the points of intersection was so great that this object of protection could not have been attained by stopping street cars between the two railroad companies' tracks at this crossing.  The distance between the main tracks of the two railroads of about eighty-five feet is not sufficient to make it practicable to stop a car so as to avoid the dangers of collision with passing railroad trains.  This

·distance is but a few feet in excess of the length of a car, and it would be impracticable to stop the car on account of the ·great danger of having one end of the car within the danger line of a passing train. The attempt to stop cars in such a situation would increase the danger of collision instead of ·diminishing it, and render the ordinance unreasonable in its ·operation. We must hold that defendant was not required to bring its cars to a standstill between the tracks of the two railroads before crossing the last one.

It is urged that the conductor failed to go a sufficient distance in front of the car before crossing the Chicago, Milwaukee & St. Paul Railway tracks to enable him to ascertain the danger from approaching trains. The evidence discloses that he preceded the car sufficiently in advance to a point between the rails of the first main track, or between the two main tracks. From either of these points he had a clear view of the tracks in both directions and was able to ascertain whether there was any visible danger from approaching trains in passing the crossing. He then signaled to the motorman to proceed over the crossing. This evidence shows without dispute that defendant's servants complied with the requirements of the ordinances in respect to bringing the car to a standstill at the required distance from the railway tracks and that the conductor was a sufficient distance in front of the car at the ·crossing and in a place to observe the danger from approaching trains.

It is further contended that there is evidence showing negligence of defendant's servants in attempting to pass over this crossing in the manner and at the time they did, because they had been informed of the approach of the passenger train before the car was in a place of danger from collision with it. This is urged on the ground that the conductor of the car was informed of the approach of the train by the noise it made as it passed upon a bridge about 300 feet to the south of the ·crossing, and that he was warned of its coming by the gate-

keeper at the railway crossing when the car was remote from the danger line of the approaching train, and also that he disregarded the warning, and negligently and carelessly directed the motorman to proceed into the place of danger where the collision occurred. The witness Behling was somewhat confusing in giving his version of the transaction, but an analysis of his statements removes any apparent conflict and establishes that he spoke to the conductor concerning the coming of the train while the conductor was passing from the Chicago & Northwestern track to those of the Chicago, Milwaukee & St. Paul Railway, when he said that something was coming, though he neither saw nor heard any train. He testifies that he did not let the gates down to stop the car from passing over the track, and that he did nothing else to indicate that there was danger should the car attempt to cross. It is evident that neither he, the conductor, nor the motorman had any information at this time that the passenger train was approaching. It would seem that the conductor proceeded until he came to the main track of the Chicago, Milwaukee & St. Paul Railway, and there made his observation to ascertain whether a train was approaching from either direction; that he neither saw nor heard anything of an approaching train, and he then directed the motorman to cross the tracks, and that the motorman immediately obeyed the call and proceeded to cross in the usual way. At this time and after the car had reached the first rail of the nearest main track, Mr. Behling and the conductor heard the noise of the train crossing the bridge, and Mr. Behling then told the conductor to pull forward or to back up quickly to avoid a collision. This was manifestly what this witness intended to state as his recollection of what occurred, though it was somewhat obscured by the difficulty with which he understood English and was able to give his version of the transaction. In view of this evidence, and all the positive evidence on the subject, it is obvious that the car was partly over, or immediately adjacent.

to, the first rail of the first main track of the crossing when the noise from the train on the bridge was heard by, or made known to, defendant's servant. It is also undisputed that there was no headlight on the engine of the coming train so that it could be seen in the darkness that then prevailed. No whistle was sounded to signal its approach. When the conductor heard the train on the bridge he immediately apprised the motorman of the danger and directed him to speed the car, and this was done, but it failed to clear the crossing before the train collided with the rear end as described.

It is strenuously insisted that the evidence tending to show this state of facts is contradicted by the necessary inferences from physical facts and evidentiary circumstances. To sustain this contention appellant's counsel submits a number of calculations which are based upon statements of the witnesses as to the speed of the approaching railroad train, the speed of the car before, at the time, and after the persons in its control heard the approaching train, and the distances the train traveled after defendant's servant heard the noise of its passage over the bridge. In what respect the result of these calculations can be said to constitute established physical facts we are not informed, nor can we conceive how they can be so regarded. The calculations are based on opinions expressed on the subjects mentioned. This, however, is a very uncertain basis and can furnish no reliable results for ascertaining the exact position of the car with respect to the railroad tracks when its approach was first heard. The calculations are predicated on many facts, assumed to be fixed and certain, but which are mere opinions, and on others which may have varied much from what they were assumed to be. We do not regard these deductions as of sufficient reliability to raise a conflict with the direct evidence on the subject. They are speculative in their character and can have no probative force as against the uncontradicted positive evidence in the case.

It is also urged that the witnesses on the subject testified

so contradictorily that the case required submission to the jury to determine the facts. The only conflicts of this nature are the statements of witnesses wherein parts of their evidence are seemingly in conflict with others, but an examination of the evidence of each witness clears up any doubt and shows harmony in all essential and material parts, and, when so treated, no such conflict is presented in the evidence on the subject of negligence from which different inferences could be drawn. We are led to the conclusion that the trial court was warranted in holding that the evidence showed that the defendant's servants were not negligent in the several respects charged in the complaint, and that the judgment dismissing the complaint was proper.

*By the Court.*—Judgment affirmed.